Mr. Roberts raises in essence three or four issues on appeal. He is contending that his rights to a speedy trial were violated, both under the speedy trial law and under the speedy trial law. and his Sixth Amendment right to a speedy trial. He also is disputing on appeal the district court's denial of a motion that he filed to suppress some evidence obtained without a warrant from some cell phones. And the last issue on appeal was some improper closing argument, statements made by the prosecutor during closing argument that talked about his rights to a speedy trial. And the last issue on appeal was some improper closing argument, statements made by the prosecutor during closing argument that talked about his rights to a speedy trial. So I'll start out with the speedy trial violation. Mr. Roberts was arrested on May 3, 2005. He was indicted on May 11, 2005, but he was not brought to trial until August 21, 2006. At the time, Mr. Roberts was in jail. He could not afford counsel, so he was appointed an attorney to represent him in the case. And initially, the trial was set to go, I believe, on July 11. The first stipulation that was filed was filed on July 5. I think we know the factual background. Which continuances do you emphasize to us as being improperly counted as improperly excluded under the speedy trial law? And what was the date of the trial clock? Well, for sure, we dispute the continuances in 2006. Pretty much all of them. The trial was continued, I believe, January 19. And there was a joint request for trial continuance, right? Yes. It was a stipulation that was submitted. And the stipulation didn't include, didn't expressly state that the defendants had consented, unlike some of the other stipulations, right? That is correct. Why is it fatal if defense counsel doesn't put in there that the defendants are stipulating? Consenting. Consenting. There's a difference. Right. If defendant consents. Yes. Personally, I believe that it's fatal because they're in prison. And the whole purpose for the speedy trial right is, as the Supreme Court has noted, is not to basically, you know, preserve memories and everything for trial. It's because you have a defendant who's sitting in jail pending a determination, really, as to their guilt or innocence. And they're sitting there waiting to go to trial. And in this case, particularly, where you have a defendant who began asserting that right in October of the year before and claiming that his attorney wouldn't discuss this case with him, wouldn't discuss the continual postponements and delays of the case with him, it becomes fatal in that context to say that. I would argue for a strict rule that if the paper, the stipulation filed for a continuance does not affirmatively state that the defendant consents, that that time is not excludable. Well, if I did, I think I would be going contrary to the language of the statute in the Speedy Trial Act. 18 U.S.C. 3161 H. 8a says the court on its own motion can also continue the trial if certain things are followed. So in that context, no, the defendant's consent would not be necessary. But I certainly would argue, and that is the argument we're making in this case, when you have a defendant who is represented by court-appointed counsel, and as we pointed out in our case, is continually moving to continue the trial for different reasons, and is doing really nothing on the case. If the defendant has not consented for over a year, then certainly in the context of this case, it was important for that attorney to have consulted with the defendant, to have discussed why the continuances were necessary, and to have put in there whether or not the defendant consented. Our argument on that point is that Mr. Roberts didn't consent and has always maintained that he did not consent to the continual postponements of the trial date. And I say in there there are different reasons, and I just quickly would like to point out that the first stipulation says defense counsel needs more time to review discovery. The second stipulation was in September, and it has similar language, and it says that discovery is still being provided to the defendants, and they will need more time to review that. In October, the trial is continued again. This is of 2005. They go in, and they have calendar call, and what they tell the judge at that point in time is that there have been, let me see here, I want to get it right. But all those continuances were obtained with a statement that the defendants understood, consented, and understood that at the time was excludable, right? Now, here's the interesting part about the October continuance. To answer your question directly, yes, they were continued with a stipulation eventually that said that the defendants agreed. However, it's hard to argue that that should be included. It's hard to argue that that should be included? Yeah, I mean, honestly, like I was saying, in this case, I don't think, honestly, if you're going just strictly under the Speedy Trial Act, that the defendants consent is required, except for that in this circuit, if you don't consent, let me put it the other way around. If you do consent, it becomes much more difficult, which is the government's argument in this case. If you do consent, even if you consent, as the government argues in this case, through counsel, your counsel acts on his own, you should still be held to that attorney's representations, and then you're precluded from ever being able to raise that on appeal, like we're doing now. That's their whole argument. They're saying, well, you consented to it, it said it right there, so because your counsel said you did and you wanted the continuance, you're bound by that, you can't raise that on appeal. So in that context, it does become necessary, you know, to determine whether or not, in fact, a defendant did or didn't consent to these cases. But there is Ninth Circuit case law that this Court is very familiar with. You have written the opinion on some of them, dealing with the Speedy Trial Act, where a defendant did, in fact, personally sign off on that stipulation or was in court and understood exactly what they were doing, yet they were still allowed to raise that issue later on appeal. So strictly under the Speedy Trial Act, it is hard to argue that that would have to be in every stipulation. However, it is a relevant factor to be able to preserve the issue for later review. Your time is starting to tick down. Yes. Would you mind addressing the motion to suppress issue in the cell phone? Yes. Our contention on that, and I don't think the facts are disputed, at least they weren't on appeal, is at the time that Mr. Roberts was arrested, he is inside of the hotel, outside is the car that was involved in transporting the kidnapped victim there. They search the vehicle, don't completely search it, and then they put that vehicle in valet. They hadn't completed the search yet. The police do that. Later on, they complete the search. I believe that the two cell phones that were recovered were recovered at the time that the car was still at the hotel, but they search in a center console of the vehicle, and they pull out these cell phones that are in the center console, two Sprint cell phones. They then take them back, and they book them into evidence, and then by the testimony of the agent in this case, nothing is done on those things for about a month or two. He then pulls the cell phones out, again, without a search warrant, and looks through the content of them and finds a video that he believes is relevant to the case and ultimately was for the government. They presented it at the trial. They cross-examined their agent on it, they cross-examined Mr. Roberts on it, and then they played it during closing argument to the jury, so it was relevant to their case. Mr. Roberts' counsel, the second attorney that he got appointed that ultimately took this case to trial, filed a motion to suppress evidence, the evidence that was on the cell phones that was obtained without a warrant. The argument that he made in the district court was the same. They didn't have a warrant. They should not have been able to search the cell phones. However, the argument focused on the fact that they didn't have a warrant to search the car, and so then the content of the cell phone shouldn't be admitted into evidence. At trial, when they admitted the evidence or tried to admit the evidence again, again, defense counsel objected to that evidence coming in, renewing his objection. So on appeal, our argument is, and I believe it's undisputed, is that they didn't have a warrant. The evidence, the videotape that they got, the videoclip from the cell phone should have been suppressed because they could have obtained a warrant. The argument on appeal from the government is that we've waived that, and they cite to Respeta Rua, I think is how you pronounce it, to say, well, you waived that claim. I have two arguments in response to that. This is the same claim we're making. It's a different argument, but it's the same claim, and the cases that they cite, in our opinion, are in opposite. In the district court, they might have argued that there was lack of probable cause, and then they contend on appeal that the search was unconstitutional because there was a dog there. Or they argue there was, the search was illegal, and then they come up here, and they argue there was no probable cause. In this case, the claim is exactly the same. There was a search that was illegal of those cell phones because there was no search warrant. That's the same. The only argument that is different is that the search warrant should have been for the phones and not just for the car. The argument below was that they needed a search warrant for the car, and they didn't obtain one. Exactly. There's no argument made that they needed a specific search warrant for the phones. There was none. Now on appeal, you're arguing, wait a minute, actually what they needed was a search warrant for the phones. So you're actually making this argument for the first time on appeal. The argument that the search warrant had to be for the phones, yes. Okay. Yeah. It's being raised for the first time on appeal. The other argument that we have in rebuttal is, and they admit there, that this court can still consider such claims, even if they are waived, for good cause shown, or for cause shown. We would argue, and it's not in the brief, that cause is shown in this case. And the reason for that is, this attorney, this new attorney that came on the case, literally gets appointed June 26th. He has to go to trial August 21. In that short time period, he does everything that prior counsel had this case for a year didn't do. He files motions to suppress. He presents a defense that, according to prior counsel, he didn't want to present. He files a motion to dismiss for violation of the speedy trial rights and my client's Sixth Amendment rights. He does all of that. They have a hearing on this motion. August 17th, just a few days before trial begins. And at that hearing, for the first time, as far as I can tell from the record, is when it's presented during testimony of the agent on the stand that it took him two months to look into these cell phones to determine whether or not, you know, there was evidence in them and whether they were going to present that or not. Before that, they need a search warrant for the phones. Why did they? I believe for the same reasons stated by the district courts, U.S. district courts in the two cases we cited, LaSalle and Park. And that is... The time delay? Not only the time delay, for sure the time delay, but the fact is that there is no exception either. The Fourth Amendment specifically says you need a search warrant. There are a few exceptions. There is no automobile exception. There was no exception that there was some sort of danger posed by the cell phones. There was no exception that it was found on his person and so it was immediately there or there was a possibility that the evidence would be destroyed. None of the exceptions that typically apply as to why you don't need a search warrant. Why didn't the vehicle exception apply? Because they're on the cell phones and the cell phones have their own content. As the courts in those cases have stated, these are now computers, literally walking computers that you have. It would be the same arguments as to why you couldn't just go into somebody's PC immediately and start taking information out. I think the cell phones are sort of like the lock box they were saying at the end of the bed. They're their own content, their own special container. Like I said, the rule is usually you get a search warrant and there has to be an exclusion for it. The automobile exception or one of those others just doesn't apply in this case nor have they contended that it does. You have about a minute left if you want to reserve. We understand you have the third issue, but we've read the briefs and we'll give you a little time for rebuttal if the government raises it. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. I'll start with the cell phone search issue since that was of interest to the panel. The claim that the defendant made in the district court was that the evidence obtained from the car should be suppressed because the police did not get a search warrant to search the car when it was in the valet parking area outside the ransom victim drop-off site. That claim that they were making is simply foreclosed by decades of Supreme Court Ninth Circuit law. You don't need, if you have probable cause, if the police have probable cause at the time to believe either that there's evidence of the crime or, well, officer safety is an issue. One thing to keep in mind, at the time that they initially, you know, the kidnappers brought the victim to the hotel, brought him inside, the FBI was there, the police was there, they took him down. So now they've got the victim recovered and they've got two defendants in custody. They don't know how many defendants there are. They don't know what else is going on. They go out and they search the car. Now, in the district court, the only argument that the defendant made was that the police needed a search warrant to do that. And that's simply incorrect. They don't need a search warrant to do that. So it was a rather cut-and-dried issue. Absolutely. So, you know, Judge McKibben is one of our finest district judges, very contemplative, but he was never presented directly with, regardless of why, you know, the rushed lawyer or whatever, he was never presented the opportunity to make a decision as to whether Ninth Circuit laws should be extended, at least from a district court perspective, to the issue of whether a separate search warrant should be obtained for cell phones, which, as we know today, include things like iPhones, BlackBerries. I mean, counsel is quite correct. These are not just cell phones. These are personal computers. In this case, it was a video clip. I mean, it was a video clip of the victim. Well, I understand. But yes. Generically speaking, cell phones today are just not devices by which people send and receive telephone calls. Exactly. I mean, people have their calendars in there. They have personal information in there, very private information in there. I have all that online. It's true. In fairness to Judge McKibben, he was never presented with that issue, was he? Exactly. And it's an interesting issue. And there's a reason that motions to suppress and the grounds for those motions. That's not exactly in the Rule 12. It just says the motions to suppress must be filed. Right. The rule says the motion to suppress must be filed. His argument basically is that Rule 12 requires a motion to suppress to be filed. He filed it, or the trial counsel filed it, and he's giving a different reason, which may or may not be in our discretion. I'm not sure it's a Rule 12 violation particularly. No. Well, I think that this Court's decisions in Restrepo Rua, in Murillo, and in Wright, in all three of those cases. That was the Dog case, right? I mean, there was no motion to suppress at all filed in that one, right? No. I think that the holding in those cases, though, I mean, the statement of law is this Court has interpreted Rule 12. And I quote, Now, the Ninth Circuit has said that in numerous cases. And obviously, the panel is bound by that. If that's an issue that needs to be taken and bank and be reconsidered, obviously, that's something the defendant could seek to do. Well, he wanted to suppress all evidence recovered from the vehicle. Yes. And as it turns out,     And I think that the court has said that. And I think that the court has said that. And I don't have to go back and check. But I believe that the only evidence from the vehicle that ended up getting admitted at trial was the video clip of the victim restrained. And the other argument that we make is that that evidence, although more graphic than the testimony, was simply cumulative. I mean, the video showed the defendant with his jeans, with his legs bound in duct tape, his wrists bound in twist ties, with a shirt over his head laying on the floor of the defendant's apartment. The victim testified. That's how he was restrained. At least two of the other co-defendants and perhaps all three testified that that was duct tape on the leg. They were cooperating. At that point, they were cooperating, which is one of the reasons there was a fairly lengthy pretrial delay here. And I think part of that was because defendants were being added. Defendants were deciding to cooperate and there was a lot of changes as the case evolved. Putting aside the waiver, potential waiver issue with the problem and the harmlessness issue on the other end, why didn't they need a warrant? Well, like I said, that's an interesting question and frankly I didn't brief it because I think that either they waived it or it was harmless. On the merits of whether they needed a separate search warrant to look inside a cell phone. Let's say a month to two months after they initially searched the vehicle. And frankly that two month delay really bolsters our argument that this is a different ground because they're not saying you needed a search warrant to search the car. Now they're making a very different argument that you need a search warrant to search the cell phone. Thank you. Well, you know, I'll tell you, I think one of the questions that I would have and would be interested to explore is whether exceptions you know, there's a rule, there's the container rule. If police have probable cause or warrant to search for something they can search any container in which that information can be found. Now this court recently extended that rule or reaffirmed that that rule applies to a computer. In that case, the search of the house, there was a search warrant to search the house looking for some financial records and some other records. What the police found was a computer and the question is whether it was okay under the container rule to search the computer. And the court said that it was of course in that case the police actually did take the extra step of getting a separate warrant. But that it was. Now in this case because there wasn't a warrant the question is whether that first of all, the first question would be whether the automobile exception which allows them to search the car for specific evidence of an ongoing crime would allow them to search the cell phone. The fact that it was a month later sitting in an evidence room somewhere when they finally went and looked at it you know, I think the better practice and I would have advised the police to get a separate warrant for it sure I would have, you know but at the end of the day A, it wasn't raised and B, if you look at all the evidence in trial it was harmless beyond a reasonable doubt I mean there were numerous victims the victim and numerous co-defendants who testified consistently about the drug deal gone bad the resulting kidnapping and all of the details there's physical evidence that corroborated the testimony I'll tell you if there's a good lesson to be learned here it's put a password into your cell phone because had there been a password here and the government would have then had to obtain a warrant for sure, they couldn't have gotten the password, and then there's a question of whether giving the password is self-incrimination so I assume that you know these are all not facts that are before us but I think that I would say the other lesson to learn is don't try to deal ecstasy and then kidnap somebody because none of that I think that's that's obvious don't call the mother and say bring the cat because she may bring the police let's talk about the closing argument though the presumption of innocence has been removed how can you defend that? well I think that if you read the whole sentence what they say is what the prosecutor says is after hearing all the evidence you will see that the cloak of the presumption of innocence has been removed how do you remove the presumption? by the government establishing beyond a reasonable doubt by convincing the jury that the defendant is guilty well the presumption still exists well the presumption is overcome bad choice of words yes and I would say I actually think that if you read especially the second sentence which is very confusing and I use the word inartful when he's talking about proof beyond a reasonable doubt that leaves you firmly convinced that the defendant is guilty and then he says if you are so convinced which sort of looks forward and agree that your duty was to find the defendant guilty which is sort of past tense let's fast forward to the next page because then so far what is reasonable doubt? he says the instruction says it's not all doubt it's proof that leaves you firmly convinced that the defendant is guilty and if you are so convinced and you agree your duty was to find the evidence guilty ladies and gentlemen the evidence is there the presumption of innocence that the defendant enjoyed a week ago is gone if you are so convinced the rule is the presumption of innocence goes with the jury into the jury room as they begin their deliberations and it is the government's burden to overcome that presumption by firmly convincing the jurors that the defendant is guilty if you are so convinced the prosecutor says and your duty is to find him the defendant guilty the presumption of innocence is gone if you're looking at it a future now here's what I will say two things I will say one is I would advise prosecutors just not to even get into the whole presumption of innocence and the cloak of innocence and all of that two ways they can be read as inartful but fairly accurate statements of the law or they can be read in a way that potentially would lead to some confusion and if the jurors took it literally that the presumption didn't apply that would be harmful and the reason that I would say that they didn't do that is that if you choose to read these sentences in the way the defendant is requesting which is such that they could possibly be confusing then you have to follow the rule of looking at these statements in the context of the whole closing statement in the context of the jury instructions I mean clearly at the time knowing that these can be read can be viewed a couple of different ways the defendant made no objection I mean the defense attorney sitting there but the defense attorney sitting there who could have interpreted it one of two ways didn't think that it was confusing enough to raise an objection about it the district court judge gave a clear a very clear and accurate instruction about the presumption of innocence about proof beyond a reasonable doubt there was no request from the jury there wasn't any question from the jury saying what does this mean I think that in the context of the jury instruction and the whole closing argument it just can't be said that this was that this plainly influenced the jury to make a decision that it wouldn't have made otherwise Last issue, speedy trial I mean frankly the defense counsel stipulated to the facts justifying every continuance Judge McKibben signed written orders finding the facts justifying the continuances the defendant is saying now and actually said prior to trial that he had disagreed with his attorney he wanted his attorney to file he had told his attorney that he didn't want continuances and the district court had a hearing about that after allowing after appointing new counsel for the defendant because the defendant wanted to raise an issue that the first lawyer didn't think there was a legal basis for so he found irreconcilable differences had a hearing at which the defendant said I told my lawyer I didn't want any continuances and the judge said to the former lawyer what do you think about that and he says well you know there's attorney client issues here and so the judge turns to the defendant and says I assume you waive the attorney client issues so your lawyer can testify about this and the defendant said no I won't waive attorney client privilege and so Judge McKibben is like well what am I supposed to do here I mean he has made representations to the court that he's consulted with you you're saying that he didn't but you won't let him tell me what really happened and I think it was absolutely reasonable in those circumstances for the district court to exercise its discretion and credit the representations that the attorney had made in filings in court and to discredit the statements that the defendant was making but there were some filings that didn't contain the stipulation or the statement that the defendant said consent there were about three of those there were at least two that I know of, the first two in 2006 and I think there I actually don't agree, I mean I agree with the defendant when he says that it's not a matter of the defendant consenting or not it's not a matter of the defendant consenting or not, it's a matter of whether there's a legitimate factual basis for a legitimate need to continue the trial and if the attorney thinks that there is the attorney who is charged with strategic decisions and case management if the defendant disagrees with that I think their choice is to get a new attorney which is eventually, I mean eventually this defendant did get a new attorney but I do think that those that if the attorney in his professional judgment felt that additional time was needed, and as I say this case was evolving as defendants were being identified as defendants were pleading guilty and cooperating, there was additional discovery that was turned over I'm sorry, these were the precise continuances that Judge McKibben was attempting to elicit information about from the defendant from which he would not allow Exactly, I mean he was trying to he was trying to elicit information about all of the continuances I see my time is up No, just finish the thought Would you say it makes perfect sense unless the defendant personally asserts the right to a speedy trial pro se, which he did He did in 13 months after the trial Now he says, he points to two things as evidence that he was raising it earlier One is a letter or a request that he wrote to the jail folks to get the address of the federal district court so that he could write the judge a letter and say I want a speedy trial So he got this request, which it shows they gave him the address of the district court There's nothing in the record to indicate that he actually wrote to the district court and made that request known The other was a very colorful conversation that he had with a friend of his where he's asserting that he's explaining to his friend that the Supreme Court says you have this right to a speedy trial and he's going to be sure that his lawyer does that but that there's no way that Judge McKibben that the district court could have known about that until the defendant personally raised it with the district court and as soon as he did Judge McKibben took action, which of course required an additional continuance when he got a new lawyer and the defendant personally said yes, I understand that Any further questions? Thanks for your time Can I ask you a quick question? Why is it harmless error for the with respect to the cell phone? Now I understand it was a video and that's always pretty powerful evidence but you have co-defendants all over the place as well as the victim testifying to precisely the same exact thing Right There's no question about that. There's no dispute that the co-defendants that pled guilty in this case ended up turning government witness came in and put the blame on my client and there's no disputing the fact because it's a fact that the victim took the stand and testified that my client had participated and gave his testimony. That's absolutely true But the reverse then is if you have all that then why admit the videotape? Why is it so important that it come in? Obviously to them it was pretty important also. There was a defense that was presented. An affirmative defense of duress As we put in the briefs, we personally believe that the videotape along with the testimony and everything else, but the videotape also was damning because of that very reason is that the only voice on the videotape is the voice of my client. Now he had an explanation for that in his testimony or whatever But I believe that coupled with the other trial error that we raised which the presumption of innocence is gone and some other things that happened in this case, that's a determination to be made by this court whether or not it would or would not be harmless On the presumption question, why wasn't that cured at least by the instructions given by Judge McKibben and I mean it's a plain error review It is a plain error review She's right, defense counsel did not object The reason we argue that the instructions did not cure that is one, I don't believe, I may be mistaken on this so I apologize I don't think there was ever an instruction on the presumption of innocence. There was an instruction about what reasonable doubt is and there was an instruction that what counsel states in closing argument is not evidence That's a useless instruction anyways because we're not talking about evidence, we're talking about instructing them on what the law is, not the evidence in this case Those instructions were given before closing argument not after. So what you have, the last thing this jury hears is the prosecutor who as we quoted from Supreme Court case law has a particularly important role even in the eyes of the public as to them representing the government and what they say and being sort of gospel truth so to speak telling the jury if you believe your duty is to find the defendant guilty, not if you believe your duty, he says as the judge pointed out here what is reasonable doubt, the instruction says it's not all doubt, this is on page 203 of the record it's proof that leaves you firmly convinced the defendant is guilty and if you are so convinced and you agree that your duty was to find the defendant guilty, well that's not their duty their duty is to listen to the evidence and apply the law to the facts and then they decide when they go in whether or not, and then he shifts the burden at the end there and he says, now you've been here you've heard everything and the only thing you have to counter the evidence right, that the government has put on is the unsupported testimony of this defendant. Defendant doesn't have to present any testimony, any evidence in this case. So clearly it's not inartful or inelegant he's telling them, look we did our case we won, it's gone, there's no presumption here, this guy's guilty as said and your duty is to find him guilty well he didn't exactly say that, what he said was that yeah he, by the weight of the evidence, he had lost his cloak essentially, terrible way to put it but not necessarily inaccurate okay you're over your time a bit, do you want to quickly address Speedy Trial? very quickly, there were two things I wanted to, first I promised the prosecutor that I would do this, in the reply brief as I was preparing for oral argument today on page 5, in rebuttal to an argument that they raised about how the third superseding indictment that was filed in November, November 30th of 2005 restarted the Speedy Trial Act and so we say, well there are some exceptions to that if the delay was unreasonable and we raised several arguments in there, on that page it makes it seem as if, what happened is that the government in October, comes in and says look we're looking at some evidence and we're probably going to be filing in the near future a superseding indictment that includes a 924C count okay, and then in the brief as we point out this happens in October, November 1 Jacob Belford, who is the additional defendant that's added by the third superseding indictment claims that he's provided with a copy of a superseding indictment now, presumably it's the indictment that adds him as a defendant because he calls up the FBI agent and says look I want to cooperate and blah blah blah that happens November 1 according to Belford, he gets this superseding indictment there is a second superseding indictment that's filed the day after, on November 2, 2005 it does in fact have a 924C count and does not include the defendant, Jacob Belford it just added the 924C count then Belford is added as a defendant on November 30th with an indictment that is actually filed in the court, so I just wanted to clarify that our brief may make it sound like there was never a superseding indictment that was filed that had this 924C count when in fact there was very quickly it seemed that the court was very concerned about consent and so forth we would argue that, as has been explained here over and over that doesn't really matter what matters here is that the district court by 9th Circuit case law has certain constraints it has to limit ends of justice continuances, and the second is it has to make factual determinations on the record justifying those things and one of our main arguments is that was not done in this case you can't just simply put Alvarez I think is one of the cases that we cite it's not a matter of just submitting a stipulation and the court signing off on it and saying okay, the court has to make factual determination justifying an ends of justice continuance, it's not to be used as this court has said every single time as a general exclusion it is to be rarely used and in this case you have, if you take a look at all the findings and stipulations, they're all over the place, and sometimes you have them going just into court and saying what do the parties want, we want to continue we're looking at 924 seat count possible okay, we'll continue it, how about this time well, we're not prepared to go to trial, the government even says in one of them, so because we were absent, we don't have our witnesses ready, and the court says, well okay, I've got a medical reason, and so he's just continuing it willy nilly every single time there were reasons in every single one of these there were reasons we've agreed among ourselves we want a continuance and the judge says, okay that didn't happen there were always reasons why you just stated them on the record well, I would say that there were some reasons sometimes and sometimes it was just a parroting of the language of the statute that says ends of justice, you know, blah blah blah with no factual findings and this court has stated in cases like Ramirez-Cortez that when you're doing an ends of justice continuance you don't just simply you know, look at it and say well, okay, I'm going to sign that stipulation, you guys agree that the ends of justice, you know say, okay, it says in Cortez and in Lloyd, Ramirez-Cortez the district court must conduct a particularized appropriate inquiry about why the parties need the continuance do they want one, how long the delay is required, adjustments that can be made with respect to the trial calendars or other plans, and the continuances whether they would, in fact, outweigh the best interest of the defendant and the public in a speedy trial so it's not just simply looking at a stipulation saying, well, great, you guys want it and you guys have put in here some reasons, some of them just say it's so ordered with no factual finding at all, by anybody, so thanks so much for your argument the case just heard will be submitted
judges: Thomas, Paez, Ezra